Joseph Mervin CHARLES, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–97–00075–CR.

Court of Appeals of Texas,
San Antonio.

Oct. 8, 1997.

Frederick J. Deyeso, San Antonio, for Appellant.

Anton Hackebeil, Dist. Atty., Uvalde, Jim Vollers, Austin, for Appellee.

Before HARDBERGER, C.J., and GREEN and ANGELINI, JJ.

## OPINION

ANGELINI, Justice.

Appellant, Joseph Mervin Charles, appeals from a conviction for the murder of his girlfriend, Nevada Ann Stelly. The jury assessed punishment at eighty-five years. In two points of error, Charles argues that statements made by Stelly about the cause of the fire were inadmissible and that there was insufficient evidence to support his conviction.

### FACTS

Stelly, her fifteen-year old son Jimmy, and Charles lived in a trailer in the Medina River West subdivision. The relationship between Charles and Stelly had been physically abusive for approximately five years. On the evening of August 12, 1995, Stelly told Charles that she and Jimmy were moving back to Louisiana as soon as her employer transferred her. Charles told Stelly, "You're not going anywhere," and left the trailer. When Charles returned, he gathered together some clothes and money, but did not leave.

Sometime after eleven p.m., Stelly called Jimmy into the living room and asked if he smelled gas. Jimmy told Stelly that he had a stuffy nose so he could not smell anything, and he went back to bed. Between one and two a.m., a fire in the trailer woke Jimmy, who escaped through his bedroom window. Once outside, Jimmy saw Charles sitting in his van looking at the trailer. When Charles saw Jimmy, he left the van and told Jimmy to go get his mother. Jimmy opened the front door and saw Stelly, who was on fire, lying on the living room floor. Jimmy pulled Stelly onto the porch, looked back, and saw that Charles and the van were gone. He then ran across the street to call 911, returned to the burning trailer, and sprayed Stelly with the garden hose. Stelly told Jim-

my that she was in a lot of pain and did not want to die. Jimmy asked who started the fire, and Stelly said, "He did it." Jimmy testified that "he" referred to Charles. Stelly died from burn complications thirty days after the fire.

En route to the fire, Officer William Scoggins saw a light blue or silver minivan with low suspension traveling toward him at a high rate of speed. The van, which did not have its headlights on, forced Officer Scoggins' vehicle off the road. A Castroville Volunteer Fire Department truck was also forced off the road by a van without headlights traveling on the wrong side of the road. The Castroville fire chief, Billy Wayne Chase, testified that the van was a blue Chrysler with customized wide tires, dark side windows, and low suspension. Jimmy testified that Charles' van was a light blue Dodge Caravan with tinted side windows, wide rims, and small tires in the front and wide tires in the back. When Charles was subsequently stopped and arrested in Arizona, he was driving a blue van.

Both the Medina County District Attorney's Office and the Texas State Fire Marshal's Office investigated the fire. The Medina County investigator, Gilberto Rodriguez, testified that his investigation revealed that the fire was intentionally set and that gasoline was used as a liquid accelerator. Thomas Sing, investigator for the Texas State Fire Marshal's Office, testified that his investigation also revealed that the fire was intentionally set by a person using a liquid accelerator, but he could not determine the type of accelerator. Sondra Budge, a chemist for the Marshal's Office, analyzed samples of materials collected at the fire and found they tested positive for gasoline. Both investigators concluded that the fire's point of origin was in the hallway in front of the two bedrooms where Stelly and Jimmy were sleeping.

### DYING DECLARATION

Charles argues that statements made by Stelly about the cause of the fire were inadmissible because they did not meet the dying declaration exception to hearsay. Charles

does not specify what these statements were and makes only one reference to the record. This lack of specificity makes it difficult to determine which statements Charles is arguing are inadmissible. We have reviewed the record, and found three possible statements that Charles may argue are inadmissible hearsay.

■ First, Jimmy testified that when he asked his mother who started the fire, she replied "He did it," and that "he" referred to Charles. Charles did not object to this testimony, so if there was error in admitting the statement, the error was waived. TEX.R.APP. P. 33.1(a).

Second, argument was held outside the jury's presence to determine whether Stelly's responses to Deputy Robert West's questions were admissible as dying declarations.[1] The trial court held that the responses were admissible; however, West was never questioned in front of the jury about these responses.

■ Third, the trial court ruled that Officer Scoggins could testify about the statements Stelly made to him on the night of the fire. This testimony consisted of:

Q Was there one thing in particular that she said to you more than once?

A She kept asking me if she was going to die.

Q And did you ask her any questions?

A Yes, I did.

Q What questions did you ask her?

A I asked her if there was anybody else in the trailer.

Q And to which she responded?

A She responded to the effect of, "Is my son out?" There was nobody else in there.

. . . .

Q What else did you ask her?

A I asked her if she knew what happened or if she could explain to me what happened. She related to me that she was in the process of separating or had asked her live-in, her common-law husband, the defendant, to leave, and that she didn't want him to come back, that he was constantly harassing her.

Q Did you feel that she understood what you were saying to her?

A At the time, yes, sir.

Q And did that continue or did you have some other impression about her ability to understand or answer your questions?

A After I got her moved away from the trailer, I could tell that the initial shock of the burns was starting to set in. In effect, it appeared to me like she was possibly going into a shock status.

. . . .

Q Did you ask her if she knew who started the fire?

A I asked her and she at that time was sobbing and was getting more and more upset, and I could not understand what she was saying basically. So she did not identify the person to me.

■ The admissibility of hearsay evidence is a question for the trial court to resolve, reviewable only under an abuse of discretion standard. *Coffin v. State*, 885 S.W.2d 140, 149 (Tex.Crim.App.1994). The appellate court's role is limited to determining whether the record supports the trial court's ruling. *Id.*

A dying declaration is "[a] statement made by a declarant while believing that his death was imminent, concerning the cause or circumstances of what he believed to be his impending death." TEX.R.CRIM. EVID. 804(b)(2). Charles' complaint is that any statements Stelly made were not dying decla-

1. The focus of the argument was whether Stelly believed her death was imminent. While still in the presence of the jury, Deputy West testified that he questioned Stelly in the burn ward the day after the fire, that she could not speak, she was connected to several IV's, her legs and arms had surgical cuts to relieve pressure, and her head was shaved. After the jury was excused, Deputy West testified that Stelly knew her name, agreed to answer questions, and indicated that she knew who started the fire. The trial judge held that a person in Stelly's condition would know and believe that her death was imminent.

rations because they were not made when Stelly believed her death was imminent, Stelly did not die until thirty days after making the statements, and there was no proof that the statements were based on Stelly's personal knowledge.

■ The declarant's belief that her death is imminent may be proved by express language or inferred from the circumstances of the case, such as the nature of the injury, medical opinions stated to the declarant, or the declarant's conduct. *Thomas v. State*, 699 S.W.2d 845, 853 (Tex.Crim.App.1985). Repeated questioning by the declarant about whether the declarant is going to live, a less than reassuring answer, the nature of the wound, and the declarant's critical condition are circumstances that indicate the declarant's awareness of approaching death. *Id.* To discount the statement as a dying declaration, the record must indicate that a negative response to the question "Am I going to die?" relieved the declarant's fears and belief of her imminent death. *Green v. State*, 840 S.W.2d 394, 411 (Tex.Crim.App.1992), *cert. denied*, 507 U.S. 1020, 113 S.Ct. 1819, 123 L.Ed.2d 449 (1993).

Dr. Aleksander Milovanovic, who performed Stelly's autopsy, testified that fifty-four percent of Stelly's body received third degree burns and thirty percent of her body received second degree burns. Dr. Milovanovic testified that Stelly had a thirty percent chance of survival, and that she had died because of burn complications.

Officer Scoggins was the first officer to arrive at the fire, and he questioned Stelly while she and Jimmy were still sitting on the porch of the burning trailer. Scoggins testified that Stelly could not walk without assistance and was suffering from second and third degree burns from her neck to her toes. Stelly constantly asked Officer Scoggins if she was going to die, to which Scoggins replied negatively to reassure Stelly and prevent her from going into shock.[2] This evidence was sufficient for the trial court to have inferred that Stelly believed her death was imminent.

■ The length of time the declarant lives after making the dying declaration is immaterial. *Herrera v. State*, 682 S.W.2d 313, 320 (Tex.Crim.App.1984), *cert. denied*, 471 U.S. 1131, 105 S.Ct. 2665, 86 L.Ed.2d 282 (1985); *see Franks v. State*, 625 S.W.2d 820, 822 (Tex.App.—Fort Worth 1981, pet. ref'd) (holding that fact that declarant lived for eight weeks after making statement was immaterial to whether statement was dying declaration). The focus of the rule is on the declarant's state of mind when the statement is made, not on the eventual outcome of the patient's injuries. Therefore, the fact that the doctors were able to keep Stelly alive for thirty days was immaterial to the determination of whether the statement was a dying declaration.

■ In order for a statement to be admissible as a dying declaration, the statement must pertain to facts that the declarant had personal knowledge of and could have testified to had she lived. *Contreras v. State*, 745 S.W.2d 59, 62 (Tex.App.—San Antonio 1987, no pet.). Stelly certainly had personal knowledge of the matters she related to Officer Scoggins, including the fact that she had told Charles to leave because she was tired of his harassment.

The record supports the trial court's ruling that the statement was admissible as a dying declaration. Point of error one is overruled.

### SUFFICIENCY OF THE EVIDENCE

■ Charles argues that Stelly's alleged inadmissible hearsay statement is the only link between him and the fire, and that without her statement the evidence is factually insufficient to support his conviction. However, even if the statement had not been admitted, the evidence is factually sufficient to support the conviction.

■ To determine factual sufficiency, we review the evidence "without the prism of

---

2. In addition to these observations, Scoggins testified that Stelly could not walk because her toes had melted like wax; Stelly had globs of charred skin that had peeled off all the way up her arms and legs and across her back, stomach and breasts; and Stelly did not realize her legs were being bitten by ants. Jimmy testified that when he saw his mother in the trailer, her skin was completely burned and her hair was on fire.

'in the light most favorable to the prosecution.' " *Clewis v. State,* 922 S.W.2d 126, 134 (Tex.Crim.App.1996) (quoting *Stone v. State,* 823 S.W.2d 375, 381 (Tex.App.—Austin 1992, pet. ref'd, untimely filed)). The verdict will be set aside only if it is so contrary to the overwhelming weight of the evidence that the conviction is clearly wrong and unjust. *Id.* This standard of review incorporates the State's burden of proving the defendant's guilt beyond a reasonable doubt. *Id.* at 136.

The charge, though, not only instructed the jury on the State's reasonable doubt burden, but included an additional instruction due to the circumstantial nature of the evidence. The jury was instructed that the circumstances "must exclude, to a moral certainty, every other reasonable hypothesis except the defendant's guilt, and unless they do so beyond a reasonable doubt, you must find the defendant not guilty." This instruction is incorrect. *See Hankins v. State,* 646 S.W.2d 191, 200 (Tex.Crim.App.1981) (holding that it is confusing and improper to instruct jury on "reasonable hypothesis" theory).

 Instead of assessing the sufficiency of the evidence according to the charge given, however, we must measure the sufficiency of the evidence by the elements of the offense as defined by a "hypothetically correct jury charge." *Malik v. State,* 953 S.W.2d 234, 235 (Tex.Crim.App.1997). A hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* The purpose of comparing the sufficiency of the evidence with a "hypothetically correct jury charge" is to ensure that a judgment of acquittal is entered only in those situations in which there is an actual failure in the State's proof, rather than a mere error in the jury charge. *Id.*

The indictment charged Charles with the felony murder of Stelly in the course of committing arson. The elements of felony murder are: (1) while in the course of committing or attempting to commit a felony, (2) committing or attempting to commit an act clearly dangerous to human life, (3) that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(3) (Vernon 1994). The elements of arson are: (1) starting a fire or causing an explosion, (2) with intent to destroy or damage a habitation, and (3) being reckless about whether the burning or explosion would endanger the life of some individual. TEX. PENAL CODE ANN. § 28.02(a)(2)(F) (Vernon 1994). These are the elements that we must use to measure the sufficiency of the evidence.

The State presented direct and unambiguous evidence that the fire was intentionally started, that the person who set the fire was reckless about the safety of Stelly and Jimmy, and that the fire caused Stelly's death. Most of the evidence that links the fire to Charles is circumstantial, but is sufficient for the jury to have found that Charles started the fire. Point of error two is overruled and the judgment is affirmed.