6-96-028-CV Long Trusts v. Dowd 



















In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00003-CV
______________________________



IN RE: DOUGLAS A. DUNN





                                                                                                                                                             

Original Mandamus Proceeding





                                                                                                                                                             
                        

Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter



MEMORANDUM OPINION

            Douglas A. Dunn has filed a petition for writ of mandamus in which he asks this Court to
order the Honorable Bill Peek, judge of the 202nd Judicial District Court of Bowie County, to direct
the district clerk to issue citation in his civil lawsuit. Dunn is a prison inmate, who is acting pro se
in the action and on this mandamus. 
            Our clerk's office has contacted the district clerk, and we have received information showing
the lawsuit has been dismissed as frivolous. This Court cannot take any action that would effect the
requested relief. Thus, the order will have no practical result and mandamus should not be ordered. 
The petition must therefore be dismissed as moot without ruling on the merits of the contention
brought forward in the petition. Dow Chem. Co. v. Garcia, 909 S.W.2d 503, 505 (Tex. 1995).



            Judgment has been rendered in the lawsuit. Therefore, the petition for writ of mandamus is
now moot.
            The petition is denied.
 
                                                                        Jack Carter
                                                                        Justice

Date Submitted:          January 21, 2004
Date Decided:             January 22, 2004



 S.W.2d 824, 846 (Tex. Crim. App. 1992); Adams, 936 S.W.2d at 315. It
will also consider whether the statement at issue was made in response to questioning by another. 
Salazar, 38 S.W.3d at 154. Neither factor, however, is dispositive of the issue. Id. If the statement
is made in the grip of stress or emotion, it may be admissible even after an appreciable amount of
time has elapsed since the event. See Zuliani, 97 S.W.3d 589 (admission of hearsay testimony
proper when victim of assault made statement twenty hours later but had not been separated from
her aggressor since assault); Snellen, 923 S.W.2d at 243 (admission of hearsay evidence as excited
utterance was proper when victim of sexual abuse made statement thirteen or fourteen hours after
event had occurred). But see Wood v. State, 18 S.W.3d 642, 652 (Tex. Crim. App. 2000) (exclusion
of testimony was not an abuse of discretion because declarant's activities during the delay indicated
he no longer remained under stress of the event).

 In a series of cases in which child victims made statements out of court, courts have
recognized the victims' statements as admissible under the excited utterance exception. (1) Common
to many of the cases where time has elapsed between the event and the child victim's statement is
the victim's return to a safe place after having left the person or the place where the event occurred.

 Reviewing a conviction for indecency with a child, the Tyler Court of Appeals upheld
admission of a statement made by the victim when the victim relayed the events to her sister five
minutes after arriving at the airport from a visit to the appellant's residence. Adams, 936 S.W.2d at
315. The court reasoned that, since the victim had no opportunity to talk to anyone until she exited
the plane, the victim made the statement very soon after having left the appellant's "zone of control." 
Id. Although a substantial amount of time had elapsed since the event, the court found she was still
dominated by the emotions of that event. Id. Also relevant were the facts that the victim began
crying and became visibly upset. Id.

 On returning home on a bicycle from a fishing spot, a nine-year-old victim of indecent
exposure told her father about a man who had offered her thirty cents, but did not tell him the man
had exposed himself to her. Hudgeons v. State, 384 S.W.2d 720, 721 (Tex. Crim. App. 1964). The
young girl then turned pale and became very upset as she told her mother the entire story about the
man exposing himself to her. Id. The trial court properly admitted the mother's testimony regarding
what her daughter said about the event. Id. The fact that the young girl did not tell the entire story
to her father, the first relative she encountered on arriving home, did not change the spontaneous
nature of the statements made to the mother. The young girl explained she was too embarrassed to
tell her father the "bad part" of the event. Id.

 In an unpublished case, (2) the San Antonio Court of Appeals upheld a trial court's admission
of a statement by a victim of indecency with a child by sexual contact. Graham v. State, No.
04-00-00722-CR, 2002 Tex. App. LEXIS 5694, at *15 (Tex. App.-San Antonio Aug. 7, 2002, no
pet.) (not designated for publication). The court considered the fact the victim had made the
statement to the testifying witness immediately after the appellant left. Id. at *8. The court also
considered the appellant's argument that the statement was in response to the question, "What is
wrong?" Id. To that argument, the court pointed to the generality of the question and to the fact that
the question itself already indicated the victim remained under the stress of her earlier experience. 
Id.

 Montanez relies heavily on Porterfield v. State, 64 Tex. Crim. 179, 141 S.W. 968 (1911), to
support his argument that P. E. was not dominated by the stress of the event when she made the
statement. In Porterfield, Ruby Maynor, the declarant, was the nurse for a disabled man who was
bedridden at his home. Id. at 968-69. Porterfield was a visitor to the house and allegedly woke
Maynor up kissing her, then slapped her on the hip and made a suggestive comment. Id. at 969. 
After the incident, Maynor got up, dressed, carried on conversations about proper times for giving
medication to her patient, and attempted to wake the son to sit with his father. Id. After that,
Maynor entered the bedroom of her patient's wife and threw herself across the bed and began to cry. 
Id. at 970. The wife asked her several questions concerning the cause of her distress, such as the
condition of the patient or if there had been bad news from back home. Id. Finally, Maynor told the
wife that Porterfield had awakened her by kissing her. Id. The Texas Court of Criminal Appeals
determined that admission of the wife's testimony regarding this statement was improper because
the statement lacked the requisite spontaneity as indicated by the repeated questions that the wife had
to ask to elicit a response from Maynor and by the several activities and conversation that filled the
time between the event and the statement. Id. 

 Montanez argues that P. E. appeared calm at her grandmother's house and did not appear to
be suffering from stress or excitement. Instead, Montanez contends P.E.'s statements were mere
narratives of past events. Additionally, Montanez attempts to establish a lack of spontaneity by
showing that P. E.'s statements served as responses to questions posed by others. We will consider
the statements made to each witness in turn.

Statements made to sister, Claudia

 Montanez points to the fact that P. E. went to her grandmother's room to watch television
after the incident. He emphasizes she made no mention of the event to her grandmother and, instead,
she rocked herself to sleep in the rocking chair. Moreover, Montanez stresses that P.E. still made
no immediate statement concerning the assault when her sister Claudia picked her up.

 Unlike the victim in Adams, P. E. did have the opportunity to talk to someone else before
Claudia picked her up. P. E. testified that she did not feel comfortable talking about the event with
her grandmother, that she was scared and embarrassed in much the same way as the victim-declarant
in Hudgeons. Similarly, P.E. may not have felt comfortable relaying the information at the location
where Montanez was likely to return. Under the zone of control theory, until P. E. left the house
where Montanez lived, she may not have felt she was able to speak of the ordeal. The fact that P.
E. could have told her grandmother of the experience is not enough to determine she had recovered
from the fear or stress of the encounter.

 The Porterfield case is distinguishable. While the declarant in Porterfield made the
statement at issue in response to several specific questions, P. E.'s statement to Claudia was not in
response to any question at all. Additionally, P. E. did not undertake normal activities or carry on
conversations as usual, as the nurse in Porterfield appeared to do. Rather, P. E. was noticeably
withdrawn and had only asked her grandmother an unrelated question and then curled up in a rocking
chair since the event. The nurse in Porterfield interacted with others and performed some of her job
duties in the time that had elapsed since the alleged assault. 

 Approximately thirty to forty-five minutes elapsed between the event and P. E.'s statement
to Claudia. This time period between the startling event and the statement is not a conclusive factor,
nor is the time elapsed in the instant case outside the wide range of time periods allowed in other
circumstances. See Zuliani, 97 S.W.3d 589 (twenty hours); Snellen, 923 S.W.2d at 243 (twelve to
thirteen hours); Arvay v. State, 646 S.W.2d 320, 321 (Tex. App.-Dallas 1983, pet. ref'd) (less than
an hour). It is relevant that time passed between the event and when P. E. talked about it. However,
that fact does not necessarily mean P. E. was not still suffering from the emotion and fear of the
event. As have many young victims of sexual offenses, P. E. made the statements in question on
returning to her home. Based on her testimony that she was scared and on testimony by Claudia,
Rosie, Sonia, and the nurse that P. E. was acting peculiar and visibly upset, even becoming
hysterical, it is reasonable to conclude P. E. was still under the emotion of the event.

 The trial court was well within the zone of reasonable disagreement when it determined P. E.
was still suffering from the stress, anxiety, and excitement of the events. It did not abuse its
discretion in admitting the victim's statements to Claudia. (3)

Statements made to Rosie Campos

 Similarly, Rosie's testimony as to what P. E. told her is admissible as an excited utterance
exception to hearsay. The time elapsed and P. E.'s condition warrant a similar application of the
elements of the exception. Based on the testimony of all the witnesses, including P. E. herself, P. E.
was crying and visibly upset. Such demeanor indicated she was still suffering from the stress and
anxiety of the assault at the time she made the statements to Rosie, rendering Rosie's testimony as
to those statements admissible under the excited utterance exception. The trial court did not abuse
its discretion in admitting the testimony as such. (4)

Statements to Nurse Irma Woodruff

 For the same reasons outlined above, the trial court did not abuse its discretion by admitting
P. E.'s out-of-court statements made to Woodruff under the excited utterance exception to the rule
against hearsay. Additionally, the statements made to Woodruff would be admissible under the
medical and diagnosis exception to the hearsay rule. Tex. R. Evid. 803(4); see Mendoza v. State,
69 S.W.3d 628, 633 (Tex. App.-Corpus Christi 2002, pet. ref'd); see also Romero v. State, 800
S.W.2d 539, 543 (Tex. Crim. App. 1990) (holding if trial court's decision to admit evidence correct
under any theory of law applicable in case, then that decision will be sustained).

Statements to Officer J. Ackard

 Montanez contends certain statements made by P.E.'s mother to Officer J. Ackard were
inadmissible hearsay within hearsay. For such a statement to properly come into evidence, each part
of hearsay must fall under an exception to the rule of exclusion. Tex. R. Evid. 805. 

 The State argues that Rosie's statements, like the ones P. E. made, were within the excited
utterance exception to the hearsay rule. It argues the statements were made under the same stress
and excitement that the mother would experience on learning her daughter had been assaulted. 
Alternatively, the State urges us to apply the exception made for a police officer to state the basis
for his investigation. See Schaffer v. State, 777 S.W.2d 111, 114-15 (Tex. Crim. App. 1989).

 A certain portion of Officer Ackard's testimony regarding what Rosie told him P. E. said fails
the double exception test, and its admission was improper. P. E.'s statements to her mother would
qualify as an excited utterance exception to hearsay since all the requisite elements are present. 
Rosie's statements to the officer, however, do not fall plainly within the excited utterance exception
and should have been excluded as hearsay.

 Under Rule 803(2), certain hearsay is deemed reliable, and therefore admissible, to the extent
it is the spontaneous, involuntary product of an excited state of mind. Glover, 2002 Tex. App.
LEXIS 7797, at *17. The activities the declarant undertakes during the time elapsed between the
event and the statement are relevant to the ultimate question of whether the declarant was still within
the grip of emotion or stress of the event. See Wood, 18 S.W.3d at 652; Sellers, 588 S.W.2d at 918. 
Between the time when Rosie learned of the assault and when she made the statement to Officer
Ackard, she had at the very least made the call to the police with the intention of filing a report, a
voluntary act that indicates a certain level of mental clarity and a readiness for questioning. 

 Of course a mother would be upset and distressed to hear her daughter had experienced such
an event. The officer testified Rosie was in a hysterical state on his arrival at the hospital. 
Rule 803(2) contemplates a statement made under circumstances that would lend more indicia of
reliability than an excited state of mind. The exception does not apply in all cases where a person
is understandably upset.

 We must consider whether the cumulative effect of the three elements indicates the statement
is sufficiently reliable as to warrant exception to the hearsay rule. Sellers, 588 S.W.2d at 918. Here,
we do not find such an indication. We hold the second portion of Officer Ackard's testimony was
hearsay within hearsay and lacked sufficient indicia of reliability to render it admissible as an excited
utterance.

 The basis for investigation exception would not apply to this portion of Officer Ackard's
testimony because the basis for his investigation had already been established by the earlier question. 
Furthermore, the limitations on this rule will not allow the State to do indirectly what it cannot do
directly. Schaffer, 777 S.W.2d at 114. The State's question called for the officer to state what Rosie
had told him in her hysterical state at the hospital, not why he responded to the matter. The State
introduced Ackard's testimony to inferentially prove Montanez had committed the offense against
P. E. Rosie's out-of-court statement to the officer was offered for its truth and was therefore
inadmissible hearsay.

 Even though the officer's testimony was inadmissible, its admission was harmless in light of
the fact that much the same testimony came in under the excited utterance exception and through the
testimony of P.E. herself. Montanez cannot show that the admission of Officer Ackard's testimony,
even if it were double hearsay not falling under exceptions, significantly affected his "substantial
rights." Tex. R. Evid. 103(a); Tex. R. App. P. 44.2(b). 

Improper Bolstering

 An appellant must raise a complaint at the trial court level by making a timely request,
objection, or motion giving the specific grounds for the complaint. Tex. R. App. P. 33.1. The record
does not indicate Montanez objected to any testimony in terms of bolstering. On several occasions,
he objected to testimony on the ground of hearsay. Because the Texas Rules of Evidence do not
specifically prohibit bolstering evidence, courts recommend that a party seeking to exclude such
evidence should object on a ground that precludes admissibility, such as the testimony being
irrelevant, needlessly cumulative, or substantially prejudicial. See Turro v. State, 950 S.W.2d 390,
400 (Tex. App.-Fort Worth 1997, pet. ref'd). An objection based on "bolstering" only will be
sufficient to preserve error, although the better practice is to object to the testimony on grounds in
the Texas Rules of Evidence. Woods v. State, 13 S.W.3d 100, 105 (Tex. App.-Texarkana 2000, pet.
ref'd). Here, the record does not indicate Montanez objected to any testimony on the ground that it
constituted bolstering or on any other ground that might have preserved error on this issue. 

 The Texas Rules of Evidence do not specifically address bolstering. Certain rules are
relevant to the issues raised by the common-law term "bolstering." Tex. R. Evid. 402, 403, 608,
613. Bolstering is evidence the sole purpose of which is to lend credibility or weight to earlier
testimony. Cohn v. State, 849 S.W.2d 817, 819 (Tex. Crim. App. 1993). Bolstering evidence lends
nothing to the case in terms of relevance. Id. at 819-20. That is, it does not function to make the
existence of a fact more or less probable that it would be without the evidence. Id. It speaks only
to the credibility of earlier testimony. Id. at 820. We must distinguish between corroborating
evidence and bolstering. Id.

 Here, the testimony of each witness holds more evidentiary value than mere bolstering. If
certain evidence corroborates other evidence in any given instance, it is not necessarily bolstering. 
If we were to apply a rule as envisioned by Montanez, then only one witness could testify to a
version of the events. This point of error is overruled.

Ineffective Assistance of Counsel

 By not properly objecting to the testimony above as bolstering, Montanez claims his trial
counsel was ineffective. An appellant has the burden of proving ineffective assistance of counsel
by a preponderance of the evidence. McFarland, 845 S.W.2d at 843. The reviewing court must
examine the trial as a whole and not focus on specific instances throughout trial, and will do so with
great deference to counsel. Id.

 The United States Supreme Court has developed a two-part test to determine whether counsel
was ineffective. First, the performance of counsel must be shown as deficient. Strickland v.
Washington, 466 U.S. 668, 687 (1984). Then, the appellant must demonstrate to a reasonable
probability that the outcome of the trial would have been different but for the counsel's errors. Id.
at 687. The errors must be so egregious as to "undermine confidence in the outcome" of the trial. 
Id. at 694. When counsel fails to object to admissible evidence, assistance is not ineffective. 
McFarland, 845 S.W.2d at 846; Lee v. State, 29 S.W.3d 570, 579-80 (Tex. App.-Dallas 2000, no
pet.).

 Montanez' complaint that counsel's failure to object to certain testimony as bolstering is
untenable. First, courts recognize that an objection based on the common-law ground of bolstering
will ordinarily preserve error, but recommend an objection set forth in terms of the Texas Rules of
Evidence. Counsel objected to much of the testimony when appropriate and did so on more
appropriate grounds. Secondly, the applicability of bolstering to the evidence cited by Montanez
fails in that the testimony itself did not qualify as bolstering. Most of the testimony challenged was,
in fact, admissible. Failure to object to admissible testimony as being improper bolstering or on any
other grounds cannot render counsel's performance at trial deficient.

 Montanez fails to satisfy the two-pronged test of Strickland in that he fails to show that trial
counsel's performance was deficient and that the errors, if any, were so egregious as to undermine
confidence in the outcome of the trial. Therefore, Montanez has not overcome the very strong
presumption that counsel's conduct falls within the wide range of reasonable professional assistance. 
Brown v. State, 881 S.W.2d 582, 589 (Tex. App.-Corpus Christi 1994, no pet.).

Legal Sufficiency

 Montanez contends the evidence at trial was legally insufficient to support a conviction for
indecency with a child. Particularly, he complains that the State failed to prove an essential element
of the offense as charged and that he acted with the intent to arouse or gratify his sexual desire. In
reviewing legal sufficiency, we view the evidence in the light most favorable to the verdict to
determine whether a rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979).

 The requisite intent of this offense can be inferred from the surrounding circumstances. 
McKenzie v. State, 617 S.W.2d 211, 216 (Tex. Crim. App. [Panel Op.] 1981); Santos v. State, 961
S.W.2d 304, 308 (Tex. App.-Houston [1st Dist.] 1997, pet. ref'd). The jury has the power to infer
the requisite intent based on the accused's conduct. See Couchman, 3 S.W.3d at 163-64. P. E.
testified as to what happened. The jury was free to infer from her testimony alone regarding how
Montanez touched her and that Montanez acted with the requisite intent to commit indecency with
a child. Additional testimony supported the verdict as well. On these facts, a rational trier of fact
could find beyond a reasonable doubt that Montanez acted with the intent to arouse and gratify his
own sexual desire. See Carlson v. State, 695 S.W.2d 695, 697-98 (Tex. App.-Dallas 1985, pet.
ref'd); McKenzie, 617 S.W.2d at 216. We overrule this point of error. 

Factual Sufficiency

 Montanez also contends the evidence at trial was factually insufficient to support his
conviction for indecency with a child. A factual sufficiency review dictates the evidence be viewed
in a neutral light, favoring neither party. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000);
Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). In determining the factual sufficiency
of the evidence to establish the elements of the offense, we view all the evidence in a neutral light
and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to
be manifestly wrong and unjust. Id.

 At trial, evidence against Montanez came in the form of testimony from the victim, the
victim's relatives, and a nurse experienced in treating sexual assault cases who saw P. E. at the
emergency room. Montanez offered testimony to the contrary. The weight to be given conflicting
testimony lies within the sole province of the jury, and the reviewing court must show deference to
the jury's determination. Cain v. State, 958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997). Viewing
the evidence in a neutral light, we cannot say the jury's verdict was clearly wrong or manifestly
unjust. We overrule Montanez' point of error as to factual sufficiency.

 We affirm the judgment of the trial court.




 Jack Carter

 Justice


Date Submitted: December 23, 2002

Date Decided: April 11, 2003


Do Not Publish

1. Hudgeons v. State, 384 S.W.2d 720, 721 (Tex. Crim. App. 1964); Bennett v. State, 382
S.W.2d 930, 931 (Tex. Crim. App. 1964); Graham v. State, No. 04-00-00722-CR, 2002 Tex. App.
LEXIS 5694 (Tex. App.-San Antonio Aug. 7, 2002, no pet.) (not designated for publication);
Carlson v. State, 695 S.W.2d 695, 697 (Tex. App.-Dallas 1985, pet. ref'd); Arvay v. State, 646
S.W.2d 320, 321 (Tex. App.-Dallas 1983, pet. ref'd); D.L.N. v. State, 590 S.W.2d 820, 822 (Tex.
Civ. App.-Dallas 1979, no writ).

 Note that some cases make reference to the statement as res gestae of the event. For clarity
and in accordance with suggestions from the Texas Supreme Court, this opinion avoids use of the
term. See Sanders v. Worthington, 382 S.W.2d 910, 915 (Tex. 1964) (pointing to fact legal writers
agree term is "vague and imprecise in its meaning and has been used by the courts so
indiscriminately that it should be abandoned entirely").
2. Effective January 1, 2003, unpublished cases can now be cited in documents to the court. 
Tex. R. App. P. 47.7. Although an unpublished case still has no precedential value, it can be
persuasive to the court. In a case designated to be published, the Amarillo Court of Appeals suggests
that a reviewing court take guidance from unpublished cases "as an aid in developing reasoning that
may be employed . . . be it similar or different." Carrillo v. State, No. 07-02-0307-CR, 2003 Tex.
App. LEXIS 2003, at *11(Tex. App.-Amarillo March 4, 2003, no pet. h.)
3. Had the trial court improperly admitted the hearsay evidence, then the error would have been
harmless. Tex. R. App. P. 44.2(b). P. E.'s testimony depicted the same sequence of events and came
into evidence without objection.
4. Here, too, any error would have been harmless error because the victim testified to the same
facts as established in the challenged testimony.