**Gary LEE, Appellant,**

v.

**The STATE of Texas, Appellee.**

Nos. 05–97–02023–CR to
05–97–02025–CR.

Court of Appeals of Texas,
Dallas.

April 12, 2000.

Publication Ordered July 13, 2000.

George White, Irving, for appellant.

Lorraine A. Raggio, Asst. Dist. Atty., Dallas, for State.

Before Justices KINKEADE, JAMES, and MILLER.[1]

## OPINION

KINKEADE, Justice.

Gary Lee appeals his convictions for aggregated theft of three checks ($29,000, $25,000, and $8,640) of more than $20,000 but less than $100,000 ("aggregated theft"), securing execution of the $29,000 check by deception ("deception"), and money laundering of the $29,000 check ("money laundering"). The jury found Lee guilty on these three charges (Lee was also charged in a fourth case with securing execution of the $25,000 check by deception, and was found not guilty). The trial court assessed the following punishments: (1) for aggregated theft, ten years' confinement in the state penitentiary and a $10,000 fine; (2) for deception, ten years' confinement in the state penitentiary and a $10,000 fine; and (3) for money laundering, twenty years' confinement in the state penitentiary and a $10,000 fine. In the aggregated theft case, Lee argues in points of error one and three that the evidence is legally insufficient; in points of error two and four that the evidence is factually insufficient; in points of error

five and six that the jury charge was "fatally defective"; and in point of error seven that his trial counsel was ineffective. In the deception and money laundering cases, Lee argues common points of error: (1) rule 802 of the Texas Rules of Evidence was unconstitutionally applied in this case; (2) the evidence is legally insufficient; (3) the evidence is factually insufficient; (4) the jury charge is fatally defective; and (5) trial counsel was ineffective. Because the evidence is legally and factually sufficient, Lee waived any complaint to hearsay or rule 802 by failing to make an objection at trial, there was no jury charge error, and his ineffective assistance of counsel complaints are unfounded, we affirm.

## Factual Background

Gladys Yoakum was the victim of a home repair scam by Lee. On January 3rd and 6th of 1997, Ms. Yoakum wrote two checks to Lee for $8,640, and $29,000. These checks were made out to "Gary Leeb," Lee's birth name and the name on his Ohio driver's license. In the notation field on these checks, Ms. Yoakum wrote, respectively, "Inside work; siding; roof Rep; nice job" and "Remodeling; Thank you." On January 7, 1997, Ms. Yoakum wrote a $25,000 check to James Herrin, Lee's co-defendant. Ms. Yoakum died before Lee's trial.

## Sufficiency of the Evidence

Lee argues the evidence was legally and factually insufficient. In points of error one, two, three, and four in the aggregated theft case, and in points of error two and three in the deception and money laundering cases, Lee claims specifically that the State's insufficient evidence consisted of inadmissible "backdoor hearsay" by Detective Haynes and the uncorroborated accomplice testimony of Herrin, and that the State failed to prove Lee acted as a "party" regarding any of the three thefts.

1. The Honorable Chuck Miller, Justice, Texas Court of Criminal Appeals, Retired, sitting by assignment.

### 1. Applicable Facts

Herrin testified he drove Lee to Ms. Yoakum's house on January 7, 1997. Unaware of what Lee intended to do, Herrin waited in the car while Lee went inside. Herrin testified he never met Ms. Yoakum. When Lee returned, he had a $25,000 check, written by Ms. Yoakum, payable to James Herrin. Herrin cashed the $25,000 check for Lee in exchange for $6,250. Lee had previously told Herrin that he had done work on her house, putting on a new roof and some siding and also doing some interior painting. But, after cashing the check, Lee said, "I fucked her," "I got her money," and "She ain't gonna say nothing." Looking at exterior and interior photographs of Ms. Yoakum's house at trial, Herrin testified Lee obviously had not done the work he said he had done. No recent remodeling, roofing, or siding work had been done.

Dallas Police Department Detective Stephen Haynes works for the swindle squad, which investigates swindles against the elderly. An employee of Ms. Yoakum's bank notified Detective Haynes that Ms. Yoakum might be the victim of a home repair scam, as three checks totaling $62,640 had been cashed against her account between January 3rd and 7th. When Detective Haynes interviewed Ms. Yoakum, she was 92 years old. He testified she was very confused and did not understand what had happened or why she had written the checks. Ms. Yoakum indicated to Haynes that she was nearly blind. Based on his conversation with her, Detective Haynes pursued the investigation. After learning the names written on the checks, he showed Ms. Yoakum photos of potential suspects, including Herrin and Lee. Haynes testified he decided to investigate Lee after this interview. Also during his interview, Haynes inspected Ms. Yoakum's house and noted there had been no recent interior or exterior repair or remodeling done.

Lee was identified by bank employees and bank surveillance photographs as the man who presented the $8,640 and the $29,000 checks at Ms. Yoakum's bank. Bank employee Evelyn Pavone testified she was unable to give Lee cash for the $29,000 check he presented because the bank had insufficient cash on hand at that time. Although she offered him a cashier's check, Lee became agitated and insisted she give him cash, stating, "I need the money." However, Lee finally agreed to a cashier's check. Pavone also testified that when she called Ms. Yoakum to confirm the check, Ms. Yoakum seemed confused and did not know who Pavone was.

Abdul Jetpuri, owner of a check cashing business, testified that a regular customer, John Stacy, called to tell him Lee was coming to cash a check. Stacy said he knew Lee and the check Lee was bringing was a good check. Jetpuri told Stacy he would still have to verify the check regardless of Stacy's personal reference. Lee later brought the $29,000 cashier's check to Jetpuri who cashed it after verifying with the bank there was no stop-payment on it.

Lee testified he cashed the checks as a favor to his long-time friend John Stacy. Stacy had the checks made out to Lee who cashed them because Stacy had lost his driver's license and had no identification to cash the checks. Lee testified he never met Ms. Yoakum and had never been to her house.

Stacy testified for the defense, but his version of the events differed from Lee's. Stacy testified on cross-examination he had heard of a woman named Gladys Yoakum but had never met her, never received a check from her, never asked anyone to go to her house to get a check from her, and never helped anyone go to her house and get a check from her. Lee called Stacy to ask where he could cash a cashier's check (Stacy could not remember if the amount was for $28,000 or $29,000). Stacy told him he could cash the check anywhere, but when Lee said he had no

driver's license, Stacy told him to go to Jetpuri's establishment.

### 2. Standards of Review

When reviewing legal sufficiency of the evidence, this Court looks to whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt, viewing the evidence in the light most favorable to the prosecution. *Geesa v. State,* 820 S.W.2d 154, 155 (Tex.Crim.App.1991). The jury is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *Bonham v. State,* 680 S.W.2d 815, 819 (Tex.Crim.App.1984). The jury is free to accept or reject all or any part of a witness's testimony. *Id; Dumas v. State,* 812 S.W.2d 611, 615 (Tex. App.—Dallas 1991, pet. ref'd). This Court is only to ensure that the jury reached a rational conclusion; not to re-evaluate the weight and credibility of the evidence. *Muniz v. State,* 851 S.W.2d 238, 246 (Tex. Crim.App.1993). Contradictions in witnesses' testimony do not destroy the sufficiency of the evidence. *Goldstein v. State,* 803 S.W.2d 777, 790 (Tex.App.—Dallas 1991, pet. ref'd).

The Court of Criminal Appeals has recently held that the "complete and correct" factual sufficiency review requires examining all the evidence, both for and against the finding, in a neutral light, and determining whether the proof of guilt is "so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." *Johnson v. State,* 2000 WL 140257, *8 (Tex.Crim.App.2000). This Court must defer to the jury's findings and may not substantially intrude upon the jury's role as the sole judge of the weight and credibility of the witnesses. *Cain v. State,* 958 S.W.2d 404, 408 (Tex.Crim.App.1997); *Huett v. State,* 970 S.W.2d 119, 123 (Tex. App.—Dallas 1998, no pet.).

### 3. Applicable Law

Theft occurs when a person unlawfully appropriates another's property with the intent to deprive the owner. TEX.PENAL CODE ANN. § 31.03(a) (Vernon Supp.2000). Appropriation is unlawful when the owner has not given effective consent. TEX.PENAL CODE ANN. § 31.03(b)(1) (Vernon Supp. 2000). Consent is not effective when it is induced by deception which occurs when a person creates or confirms by words or conduct a false impression of law or fact that will likely affect the other's judgment in a transaction, and which the person does not believe to be true. TEX.PENAL CODE ANN. § 31.01(1)(A), (3)(A) (Vernon Supp. 2000). Thefts may be aggregated when the amounts were obtained pursuant to one scheme or continuing course of conduct, and the conduct can be considered as one offense. TEX.PENAL CODE ANN. § 31.09 (Vernon Supp.2000).

When a person deceptively secures execution of a document with the intent to defraud or harm another, causing the other person to sign or execute a document regarding property or service, he has committed an offense. TEX.PENAL CODE ANN. § 32.46(a)(1) (Vernon Supp.2000).

A person commits the offense of money laundering when he knowingly obtains or maintains an interest in, receives, conceals, possesses, transfers, or transports the profits of criminal activity, or conducts, supervises, or facilitates a transaction involving the profits of criminal activity. TEX.PENAL CODE ANN. § 34.02(a) (Vernon Supp.2000). "Criminal activity" is any felony offense. TEX.PENAL CODE ANN. § 34.01(1)(A) (Vernon Supp.2000).

### 4. Application of the Law to the Facts

#### a. Factual Sufficiency of Aggregated Theft, Deception, and Money Laundering Cases

In this case, the jury chose to believe the State's evidence rather than Lee's version. Lee testified he never met Ms. Yoakum. He further testified that, as

a favor to Stacy, he let Stacy make the checks out to him and he cashed them. Stacy told Lee he had lost his identification, so Lee agreed even though Lee had only an out-of-state driver's license. Stacy, however, testified he had never met Ms. Yoakum, never received a check from her, and never directed anyone to get a check from her. He also testified Lee called him asking where he could cash a cashier's check for a large sum of money even though Lee had no driver's license. Herrin, Lee's co-defendant, testified he drove Lee to Ms. Yoakum's house but did not know why. Lee went into her house alone and returned to the car with a $25,000 check made out to Herrin. Lee gave Herrin $6,250 for cashing the check for him. In addition, Jetpuri, who cashed the $29,000 check for Lee, testified Stacy had been a frequent and good customer of his check cashing establishment for several months, often cashing large checks. Pavone testified that when Lee attempted to cash the $29,000 check at the bank, Lee told her, "I need the money." It was for this jury alone as the exclusive judge to weigh all the witnesses' credibility and their testimony. See Cain, 958 S.W.2d at 408.

Herrin also testified Lee initially told him he put on a new roof and some siding, and did some interior painting; but, after Herrin cashed the $25,000 check, Lee told Herrin he took Ms. Yoakum's money and she was not going to tell anyone. At Lee's trial, Herrin looked at pictures of Ms. Yoakum's house and testified that none of the work Lee said he did was actually done. These photographs were introduced into evidence, and the jury was free to look at them as evidence that no work had been done on her house. See Santellan v. State, 939 S.W.2d 155, 164 (Tex.Crim.App. 1997). The jury also heard Detective Haynes testify that his inspection of her house revealed no work had been done. See also id. In addition, the jury was free to view the notations Ms. Yoakum made on the three checks as evidence that she be-

lieved the work was being done or had already been completed. See also id.

We defer to the jury's role as the sole judge of the weight and credibility of the witnesses. See Huett, 970 S.W.2d at 123. Because we see no manifest injustice, we conclude the evidence in all three cases was factually sufficient. See Cain, 958 S.W.2d at 408. We overrule Lee's second and fourth points of error in the aggregated theft case and third point of error in the deception and money laundering cases.

b. Legal Sufficiency of the Aggregated Theft Case

Lee was charged with securing the execution of the $29,000 and $25,000 checks by deception. Lee argues that because the jury found him not guilty on the $25,000 check, they could not have found him guilty of the offense of aggregated theft of all three checks. Lee is mistaken in his analysis. The jury was required to convict Lee only of the theft of more than $20,000 but less than $100,000, not to find him guilty of theft of all three checks. Johnson v. State, 734 S.W.2d 199, 205–206 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd). The jury was free to find Lee guilty of the theft of all three checks or any combination thereof, as long as the aggregated amount was within the above ranges. See id.

Lee also complains on appeal the jury could not have properly considered the $25,000 check in this verdict since they found him not guilty of securing execution of that check by deception. This argument is not proper. Even if the jury had considered the $25,000 check in finding Lee guilty of the aggregated theft charge, inconsistent verdicts do not require a reversal: " 'The most that can be said ... is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.' " Ward v. State, 938 S.W.2d 525, 528 (Tex.App.—Texarkana 1997, pet. ref'd) (quoting U.S. v. Powell,

469 U.S. 57, 63, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984)). Furthermore, even if the jury did not consider the $25,000 check in their assessment of Lee's guilt in the aggregated theft charge, the combined value of the $8,640 and $29,000 checks, which Lee himself cashed, or the $29,000 check alone, was more than $20,000, the minimum value alleged. A rational jury could have found the essential elements of aggregated theft beyond a reasonable doubt, so the evidence is legally sufficient. *See Geesa*, 820 S.W.2d at 155. Consequently, we overrule Lee's first and third points of error.

### c. Legal Sufficiency of the Deception Case

■ The evidence is legally sufficient to establish Lee deceived Ms. Yoakum in getting her to write him the $29,000 check. From the evidence, *infra*, the jury could have found Lee took advantage of a confused elderly woman with poor eyesight. The evidence establishes he created and confirmed by his words and acts a false impression that the work had been or was being done, although he did not believe that to be true, and this affected Ms. Yoakum's judgment in giving him the checks. *See Goldstein*, 803 S.W.2d at 791. Because the jury reached a rational conclusion, we conclude the evidence is legally sufficient to sustain Lee's conviction for securing the execution of the checks by deception. *See Muniz*, 851 S.W.2d at 246. Consequently, we overrule his second point of error.

### d. Legal Sufficiency of the Money Laundering Case

■ The evidence offered was also clearly legally sufficient to sustain Lee's conviction for money laundering under the penal code. Lee admitted to cashing the $29,000 check. Photographs in evidence show Lee with that check at the bank. Pavone, the bank teller, testified she issued a $29,000 cashier's check to Lee when he presented the check to cash it. Jetpuri testified he gave Lee $29,000 cash for the cashier's check. Obviously, Lee acquired or maintained an interest in, received, concealed, possessed, and/or transferred the proceeds from the theft of this check. *See* TEX.PENAL CODE ANN. § 34.01(1)(A) and 34.02(a) (Vernon Supp.2000). Even if the jury believed that Lee cashed the check as a favor to Stacy, he would still be guilty of money laundering under the statute if the jury believed that he knew it was "dirty money." A rational jury could have found from the evidence, *infra*, that Lee knew it was. Therefore, the evidence was legally sufficient as a rational jury could have found the essential elements of money laundering beyond a reasonable doubt. *See Geesa*, 820 S.W.2d at 155. We overrule Lee's second point of error.

### 5. Factual and Legal Sufficiency of Evidence of Acting as a Party

In these sufficiency points of error, Lee also complained the State failed to prove he acted as a party to any of the offenses. We conclude the evidence, *infra*, is more than sufficient factually and legally to establish that Lee was a party to these three offenses.

### 6. Accomplice Witness Testimony and Corroboration

In his sufficiency points of error, Lee contends Herrin's accomplice witness testimony was uncorroborated; therefore, he argues, it was not properly considered by the jury and it contributed to the insufficiency of the evidence.

■ Section 31.03(c)(2) of the Texas Penal Code requires the State to corroborate the testimony of an accomplice that tends to connect the defendant to the crime; however, the accomplice testimony need not be corroborated to establish the defendant's knowledge or intent. TEX.PENAL CODE ANN. § 31.03(c)(2) (Vernon Supp. 2000). The remedy for the State's failure to sufficiently corroborate accomplice witness testimony when required results in the defendant's acquittal. *Cathey v. State*, 992 S.W.2d 460, 463 n. 2 (Tex.Crim.App.

1999), *cert. denied,* 528 U.S. 1082, 120 S.Ct. 805, 145 L.Ed.2d 678 (2000).

■ The proper appellate review requires this Court to eliminate from consideration the accomplice witness testimony and then review the nonaccomplice testimony to determine whether any evidence tends to connect the defendant to the offense. *Hernandez v. State,* 939 S.W.2d 173, 176 (Tex.Crim.App.1997). The nonaccomplice evidence alone does not have to establish the defendant's guilt beyond a reasonable doubt, nor must it directly link him to the commission of the offense. *Id.* There must be only some non-accomplice evidence tending to connect the defendant to the crime. *Id.* Any independent evidence tending to verify an accomplice witness's version rather than the defendant's version is deemed to be corroborative, even if it goes only to "a mere 'detail'" versus a substantive connection between the defendant and the offense. *Beathard v. State,* 767 S.W.2d 423, 430 (Tex.Crim. App.1989), *cert. denied,* 528 U.S. 954, 120 S.Ct. 380, 145 L.Ed.2d 296 (1999).

■ Looking to the evidence, *infra,* there was sufficient non-accomplice evidence to corroborate Herrin's testimony. The three checks, the bank surveillance photographs, and the testimony of the bank employees, Detective Haynes, Jetpuri, and Stacy (who was not a co-defendant) all tended to prove that Herrin's version of the events was true rather than Lee's version. *See Hernandez,* 939 S.W.2d at 176; *Beathard,* 767 S.W.2d at 430. This nonaccomplice evidence clearly connected Lee to the offenses. *See Hernandez,* 939 S.W.2d at 176. Therefore, Herrin's testimony was sufficiently corroborated by the State, and was properly considered by the jury.

### Hearsay

In his sufficiency points of error in all three cases, Lee argues that certain parts of Detective Haynes's testimony were inadmissible as "backdoor hearsay." Specif-

ically, he complains of Haynes's testimony which indicated his investigation of Lee resulted from his interview with Ms. Yoakum. Also, in his first point of error in the deception and money laundering cases, Lee complains rule 802 of the Texas Rules of Evidence was unconstitutionally applied in his cases. Specifically, he contends this Court is required under rule 802 to consider the "backdoor hearsay" testimony of Detective Haynes when conducting our sufficiency review. We note the substance of Haynes's conversation with Ms. Yoakum was not admitted.

■ First, Lee failed to raise an objection of "backdoor hearsay" at trial and, therefore, waives the right to complain of it on appeal. *See Charles v. State,* 955 S.W.2d 400, 403 (Tex.App.—San Antonio 1997, no pet.); *Cavazos v. State,* 904 S.W.2d 744, 748 (Tex.App.—Corpus Christi 1995, pet. ref'd). In addition, Lee also failed to object regarding the constitutionality of the application of rule 802 in his cases, waiving that complaint on appeal. *Curry v. State,* 910 S.W.2d 490, 496 (Tex.Crim.App.1995) (points of error regarding constitutionality of statute not preserved where defendant failed to make specific, timely objection); *Ortiz v. State,* 993 S.W.2d 892, 897 (Tex.App.—Fort Worth 1999, no pet.) (appellant failed to preserve constitutional issue by not objecting at trial on constitutional grounds asserted on appeal). Therefore, Lee has waived the right to complain on appeal that Detective Haynes's testimony was "backdoor hearsay" and that rule 802 was unconstitutionally applied in his cases.

■ Even if Lee had properly objected at trial, Detective Haynes's testimony would have been properly admissible as it was not hearsay. Police officers may testify to explain how the investigation began and how the defendant became a suspect. *Dinkins v. State,* 894 S.W.2d 330, 347 (Tex.Crim.App.); *Short v. State,* 995 S.W.2d 948, 954 (Tex.App.—Fort Worth 1999, pet. ref'd) (complained-of testimony merely explains why police officer began

his investigation); *Thornton v. State*, 994 S.W.2d 845, 854 (Tex.App.—Fort Worth 1999, pet. ref'd) (police officer's testimony not hearsay when admitted to establish the course of events and circumstances leading to defendant's arrest). Therefore, rule 802 would not have been an issue since the testimony was not hearsay and the "backdoor hearsay" complaint on appeal would be overruled.

■ Furthermore, had Detective Haynes's testimony been hearsay, any error in admitting it was harmless. There is sufficient evidence in the record to support the jury's findings of guilt in the three cases. *See Brooks v. State*, 990 S.W.2d 278, 287 (Tex.Crim.App.), *cert. denied*, 528 U.S. 956, 120 S.Ct. 384, 145 L.Ed.2d 300 (1999). So, again, any "backdoor hearsay" complaint on appeal would have been overruled.

■ However, had it been hearsay, the unconstitutional application complaint regarding rule 802 would have been an issue. Regardless, Lee is mistaken in his interpretation of the rule. Rule 802 of the rules of evidence provides that inadmissible hearsay which is admitted without objection will not be its denied probative value simply because it is hearsay. TEX. R.EVID. 802. The rule does not bestow probative value on the evidence merely because it was hearsay admitted without objection. *See id.* Also, contrary to Lee's argument, there is nothing in the rule requiring this Court to consider this evidence in our sufficiency review merely because it was hearsay admitted without objection. *See id.* The probative value of such unobjected-to hearsay evidence is considered by the fact finder with the other evidence admitted at trial. *Fernandez v.. State*, 805 S.W.2d 451, 455–56 (Tex. Crim.App.1991). On sufficiency review, an appellate court does not have the power to re-evaluate the probative value of any particular piece of evidence. *See id.* at 456. Therefore, we would have considered the hearsay testimony along with all the other probative evidence admitted at trial when conducting our appellate review; not because rule 802 required it and not because rule 802 accorded probative value to the testimony merely because it was unobjected-to hearsay.

Consequently, we overrule Lee's first point of error in the deception and money laundering cases.

### Jury Charge Error

Lee complains the jury charges were fatally defective. In point of error five in the aggregated theft case and point of error four in the deception and money laundering cases, Lee specifically complains that the court erred in failing to restrict or limit the jury's consideration of Herrin's accomplice witness testimony because it related only to the $25,000 check. In point of error six in the aggregated theft case, Lee specifically complains the trial court improperly allowed the jury to convict Lee based on one theft alone.

■ If a defendant fails to object at trial to the jury charge, he must show on appeal that he suffered egregious harm in order to obtain a reversal. TEX.CODE CRIM. PROC.ANN. art. 36.19 (Vernon Supp.2000); *Hutch v. State*, 922 S.W.2d 166, 170–71 (Tex.Crim.App.1996). When the trial judge asked whether there were any objections to the jury charge, Lee's counsel answered, "None from Defense, Your Honor." Because he failed to object at trial to the jury charge, Lee must show he suffered egregious harm. *See id.* Egregious harm includes errors affecting the case's foundation, or which deny the defendant a valuable right, significantly affect a defensive theory, or make the case for guilt or punishment clearly and substantially more compelling. *Matthews v. State*, 999 S.W.2d 563, 565 (Tex.App.—Houston [14th Dist.] 1999, pet. ref'd).

In this case, there was no jury charge error. Contrary to Lee's argument, Herrin's testimony was not limited to just the $25,000 check. He testified his involvement in the theft was related only to the

$25,000 check from which he received $6,250 from Lee for cashing the check. However, Herrin also testified that Lee initially told him he had put a new roof and siding on Ms. Yoakum's house, and had done some interior painting, but later said, "I fucked her," "I got her money," and "I took her money; she ain't gonna say nothing." Also, from looking at exterior and interior photographs of the house which were admitted at Lee's trial, Herrin testified he could see that none of the work Lee claimed to have done was actually done. In addition, Lee told Herrin he had already received a couple of checks from her.

■ Regardless, had Herrin's testimony pertained only to the $25,000 check, the trial court would not have been required to restrict the jury's consideration of it. Logically, the jury would have been able to consider the testimony only in reference to the $25,000 because it would not have made sense as applied to the other two checks. We conclude there was no jury charge error. Consequently, we overrule Lee's fifth point of error in the aggregated theft case and fourth point of error in the deception and money laundering cases.

Lee is mistaken in his argument that, based on the jury charge, the jury was improperly allowed to convict him on the theft of only one of the checks. Under section 31.09 of the penal code, the jury was permitted to convict Lee of aggregated theft based on the theft of one check, all three, or a combination. *See* TEX.PENAL CODE ANN. § 31.09 (Vernon Supp.2000). The only requirement was that the aggregated value of the stolen checks be more than $20,000 but less than $100,000, the values alleged. *See Johnson v. State,* 734 S.W.2d 199, 206 (Tex.App.—Houston [1st Dist.] 1987, pet. ref'd). The amounts of the checks were $25,000, $29,000, and $8,640. The jury could have found Lee guilty of the theft of either the $25,000 check or $29,000 check, or any combination of the three, as long as the value fell within the alleged ranges. *See* TEX.PENAL CODE ANN.

§ 31.09 (Vernon Supp.2000); *Johnson,* 734 S.W.2d at 206. Consequently, we overrule Lee's sixth point of error in the aggregated theft case.

### Ineffective Assistance of Counsel

Lee complains he received ineffective assistance of trial counsel. In amended point of error seven in the aggregated theft case and amended point of error five in the deception and money laundering cases, Lee specifically argues his trial counsel was ineffective for failing to request notice of intent from the State regarding its use of Lee's extraneous offenses and for failing to object to: (1) the State's request during punishment for the trial court to consider the unadjudicated extraneous offense of assault; (2) the State's reference to Lee's "other habits" as testified to by Stacy; and (3) the State's request during punishment that the trial court consider the testimony of Herrin which Lee claims was not corroborated.

Regarding the notice of intent, Lee is mistaken as to the facts. According to the record, his trial counsel did make a request in a motion filed September 8, 1997, entitled "Disclosure of Evidence of Other Crimes, Wrongs, or Acts Which the State Intends to Use in Its Case–in–Chief." Therefore, this complaint is without merit.

Lee also argues his trial counsel failed to object to the particular items listed above. Regarding the first two, Lee is again mistaken as to the facts. The record clearly indicates his trial counsel did object to the State's request the trial court consider the unadjudicated assault and to the State's reference to Lee's "other habits." Trial counsel timely objected and the trial court overruled the objections. Therefore, these complaints are without merit.

■ Counsel did not object to the State's request during punishment that the trial court consider Herrin's testimony. However, as discussed *infra,* Herrin's testimony was sufficiently corroborated. Failure to object to admissible evidence

does not constitute ineffective assistance of counsel. *Kan v. State,* 4 S.W.3d 38, 46 (Tex.App.—San Antonio 1999, no pet. h.); *see White v. State,* 999 S.W.2d 895, 900 (Tex.App.—Amarillo 1999, pet. ref'd) (appellant must show the testimony was subject to exclusion via legitimate objection before counsel's failure to object constitutes prejudicial behavior).

Consequently, we overrule Lee's seventh point of error in the aggregated theft case and point of error five in the deception and money laundering cases.

We affirm the trial court's judgments.