**Opinion issued December 17, 2019**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-18-00787-CR

—————————————

**KENNETH MARTIN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 338th District Court**
**Harris County, Texas**
**Trial Court Case No. 1535720**

---

## MEMORANDUM OPINION

Kenneth Martin was charged with robbery of D. Cardona-Melendez. *See*

TEX. PEN. CODE § 29.02. After finding him guilty, the jury could not reach a

unanimous verdict for punishment. After the trial court read an "*Allen* charge"[1] to the jury, the jury sentenced Martin to 15 years' imprisonment and assessed a $3,000 fine. On appeal, Martin contends that he received ineffective assistance of counsel because his attorney failed to object to inadmissible hearsay testimony and extraneous-offense evidence. We affirm the trial court's judgment.

## Background

### A.     Testimony of D. Cardona-Melendez

At around 3:00 p.m. on October 26, 2016, Delma Cardona-Melendez finished her shift at a supermarket at Sharpstown Mall. Cardona-Melendez waited outside for a ride home. She noticed a white Mercedes drive past her. Cardona-Melendez saw three men inside the car. The front-seat passenger and the back-seat passenger were looking at her. By the way the men were looking at her, Cardona-Melendez believed that "they were going to get out" of the car and "do something" to her. At that moment, Cardona-Melendez tried to walk away quickly to escape from the men, but she did not succeed. The two passengers got out of the car, approached Cardona-Melendez from behind, and attacked her. One of the men grabbed Cardona-Melendez by the arm and threw her to the ground. While she was on the ground, one passenger, later identified as Kenneth Martin, kicked Cardona-Melendez's knee, took her cell phone from her hand, and took her purse, which

---

[1]     *See   Allen v. United States*, 164 U.S. 492 (1896) (providing for a supplemental jury instruction to encourage dialogue between an otherwise deadlocked jury).

contained another cell phone, $160 in cash, and other personal items. After the robbery, Cardona-Melendez saw Martin get into the backseat of the white Mercedes while the other man got in the front seat. The white Mercedes drove off quickly. The attack left scratches and bruises on various parts of Cardona-Melendez's body. Cardona-Melendez called the police to report the robbery. She later identified Martin in a photo array and at trial as the man who kicked and robbed her.

**B.      Testimony of Detective A. Carmona**

The State called Detective A. Carmona to testify about his investigation of the robbery of Cardona-Melendez. Detective Carmona became involved in the investigation when he heard a robbery of four other people reported over police radio that occurred at the Sharpstown Hilton Hotel and also involved a white, four-door Mercedes. The officers tried to follow the white Mercedes and detain it, but they did not succeed. Detective Carmona explained that, through his investigation, he connected Cardona-Melendez's robbery to the robbery at Sharpstown Hilton Hotel and to another robbery that same day inside the parking garage of the Houston Galleria Mall.

Detective Carmona explained that the modus operandi connected the three robberies. First, the robberies occurred on the same day around the same time. Second, the suspects in all three robberies were riding in a white Mercedes sedan.

3

Third, all three complaining witnesses provided similar descriptions of the suspects. Fourth, the robberies were close in proximity so that a person could drive to "all those locations in a very short amount of time." Fifth, the robberies were committed in a similar fashion in that two of the robberies involved an assault. Finally, the complaining witnesses of the Galleria Mall and Sharpstown Hilton Hotel robberies reported the same paper license tag numbers on the white Mercedes.

Detective Carmona searched the paper license tag number, which led him to J. Reeder, the owner of the white Mercedes. On the night of the three robberies, Reeder reported her car stolen by two black males. But upon meeting and interviewing Reeder, Detective Carmona discovered that Reeder had made a false report. According to Detective Carmona, Reeder stated that she and Martin were friends and that she allowed him to borrow her car on the night of the robberies. Martin told Reeder that he would use her car to pick up his brother. But, about 30 minutes after the driver of the white Mercedes wrecked the car as it was being chased from the Sharpstown Hilton Hotel robbery and the Mercedes passengers escaped, Reeder reported her Mercedes stolen. Reeder later confirmed the identities of the three suspects—one of which was Martin.

Detective Carmona also testified that Reeder admitted Martin had urged her to falsely report her vehicle stolen. Reeder noticed that Martin was "sweating" and

4

that his clothes were "torn." Based on this information, Detective Carmona testified that he concluded that Martin visited Reeder after he evaded the police. Reeder did not testify at trial.

## C.    The jury trial

Martin was indicted for the robbery of Cardona-Melendez. Martin pleaded not guilty. After certain witnesses testified, Martin's counsel requested a limiting instruction for testimony about statements made by Reeder, an unavailable witness. The trial court gave the requested limiting instruction as to the hearsay evidence. Counsel also requested a limiting instruction as to extraneous offenses, and the court gave the jury that instruction as well. After the close of evidence, the jury found Martin guilty of robbery. At first, the jury could not reach a unanimous verdict for punishment. But after the trial court read an *Allen* charge to the jury, the jury sentenced Martin to 15 years' imprisonment and assessed a $3,000 fine. This appeal followed.

**Ineffective Assistance of Counsel**

Martin first contends he received ineffective assistance of counsel because his attorney failed to object to Detective Carmona's testimony as inadmissible hearsay when he testified about Reeder's statements that Martin borrowed her white Mercedes, returned it after apparently evading arrest, and urged her to make a false police report. Martin's second ineffective-assistance claim is that his

5

attorney failed to object to witness testimony about the two extraneous robberies that occurred at Galleria Mall and Sharpstown Hilton Hotel.

## A. Standard of review

To prevail on a claim of ineffective assistance of counsel, an appellant must show that (1) his trial counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). An appellant bears the burden of proving his ineffective-assistance claims by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998) (per curiam). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *See Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

We indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Ex parte White*, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004). Without contrary evidence, we will not second guess counsel's strategy through hindsight. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) ("[I]n the absence of evidence of counsel's reasons for the challenged conduct, an appellate court commonly will

assume a strategic motivation if any can possibly be imagined . . . .") (internal quotation omitted).

Appellate review of counsel's representation is highly deferential; we must "indulge in a strong presumption that counsel's conduct was *not* deficient." *Nava*, 415 S.W.3d at 307–08; *see Strickland*, 466 U.S. at 689. To overcome this presumption, claims of ineffective assistance of counsel must be firmly founded in the record and affirmatively demonstrate the alleged ineffectiveness. *See Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). A reviewing court will rarely be able to fairly evaluate the merits of an ineffective-assistance claim on direct appeal because the trial record is usually undeveloped and inadequate to reflect the motives behind trial counsel's actions. *See id*. In fact, trial counsel should have a chance to explain his or her actions before being found ineffective. *See Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). As the Court of Criminal Appeals has instructed us, when, as here, trial counsel is not given a chance to explain his actions, "the appellate court should not find deficient performance unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

To show ineffective assistance, the appellant also must prove that he was prejudiced by counsel's actions. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). This requires the appellant to show a reasonable probability that, but for trial counsel's unprofessional errors, the result of the proceeding would have been different. *Id*.

## B.    Hearsay statements

To establish deficient performance based on a failure to object to hearsay, an appellant must show that the trial court would have committed error in overruling the objection if trial counsel had objected. *Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996) (per curiam); *Toledo v. State*, 519 S.W.3d 273, 287 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd).

Generally, testimony relaying an out-of-court statement offered at trial to prove the truth of the matter asserted is inadmissible hearsay unless the statement falls within a statutory hearsay exception. TEX. R. EVID. 801(d), 802. A limited exception allows testifying officers to place their investigative actions in context. *Schaffer v. State*, 777 S.W.2d 111, 114 (Tex. Crim. App. 1989) (en banc). An officer may testify to out-of-court statements without violating the hearsay rule to explain why the defendant became the subject of an investigation. *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995) (en banc). "An arresting officer should not be put in the false position of seeming just to have happened upon the

8

scene, he should be allowed some explanation of his presence and conduct." *Schaffer*, 777 S.W.2d at 114. If the officer testifies about how "he happened upon the scene," then the testimony is not hearsay because it "was necessary for the jury's understanding of the events and was not introduced for the truth of any implications." *Id.* at 115.

So "testimony by an officer that he went to a certain place or performed a certain act in response to generalized 'information received' is normally not considered hearsay because the witness should be allowed to give some explanation of his behavior." *Poindexter v. State*, 153 S.W.3d 402, 408 n.21 (Tex. Crim. App. 2005), *abrogated on other grounds by Robinson v. State*, 466 S.W.3d 166, 173 n.32 (Tex. Crim. App. 2015); *see Sandoval v. State*, 409 S.W.3d 259, 282 (Tex. App.—Austin 2013, no pet.). "But details of the information received are considered hearsay." *Poindexter*, 153 S.W.3d at 408 n.21. The officer "should not be permitted to relate historical aspects of the case, replete with hearsay statements in the form of complaints and reports, on the grounds that [he] was entitled to tell the jury the information upon which [he] acted." *Schaffer*, 777 S.W.2d at 114–15. "The appropriate inquiry focuses on whether the 'information received' testimony is a general description of possible criminality or a specific description of the defendant's purported involvement or link to that activity." *Poindexter*, 153 S.W.3d at 408 n.21.

In *Black v. State*, 503 S.W.2d 554, 557 (Tex. Crim. App. 1974), a police officer testified about how he heard a general broadcast over the police radio about a robbery which gave a detailed description of one of the participants and the automobile in which he was riding. *Id*. The descriptions matched the appellant. The Court of Criminal Appeals relied on its decision in *Johnson v. State*, 379 S.W.2d 329, 331 (Tex. Crim. App. 1964), and held that the officer's testimony was not hearsay because he was describing events as he received the information over the broadcast and did not testify about the contents of the police report. *Id*.

Similarly, in *Lee v. State*, 29 S.W.3d 570, 577–78 (Tex. App.—Dallas 2000, no pet.), a police officer testified about what the complaining witness had told him when he arrived at the scene to investigate a home repair scam. *Id.* The crux of the officer's testimony was that his investigation of the appellant resulted from his interview with the complaining witness. *Id*. The court of appeals held that the officer's testimony was not hearsay. The court of appeals explained that the officer's testimony was not hearsay because the officer explained how the investigation began and how the appellant became a suspect. *Id*. (citing *Dinkins*, 894 S.W.2d at 347).

In contrast, in *Wright v. State*, No. 12–14–00125–CR, 2015 WL 4116701, at *3 (Tex. App.—Tyler July 8, 2015, no pet.) (mem. op., not designated for publication), an officer testified that he went to a particular hotel room because

someone had told him that "the subject [in room 128] had the keys to the car over a possible drug debt that the [declarant] owed [the appellant]." *Id*. The court of appeals held that the officer's testimony provided details unnecessary to explain the officer's presence at the scene, and it suggested that appellant was a drug dealer. *Id*.

The testimony complained of here is more like the "general description of possible criminality" in *Black* and *Lee* than the specific, detailed statement *Wright*. Detective Carmona testified that he heard a call for backup over the radio broadcast about an aggravated robbery at the Sharpstown Hilton Hotel. The complaining witnesses of the Sharpstown Hilton Hotel robbery provided the officers with the paper license tag number, which Detective Carmona linked to Reeder during his investigation. Detective Carmona later learned from Reeder that she had loaned her white Mercedes to Martin on the day Cardona-Melendez was robbed. Thus, the record reflects that the testimony of Detective Carmona was "a narration of certain events occurring at the time of the robbery." *Johnson*, 379 S.W.2d at 333. For these reasons, Detective Carmona's testimony was not inadmissible hearsay because he explained how the investigation began and how Martin became a suspect. *See Schaffer*, 777 S.W.2d at 115; *Black*, 503 S.W.2d at 557. Thus, we conclude that Martin has not established that the trial court would have committed error in overruling the objection if trial counsel had objected.

Even if Martin's counsel had objected to the testimony and argued that Detective Carmona's testimony provided details unnecessary to explain his presence at the scene or involvement in the case, Martin has not established counsel's reasons for his actions. We cannot conclude, on this record, that counsel's failure to object was so outrageous that no competent attorney would have engaged in it because Martin's attorney later requested a limiting instruction for Detective Carmona's testimony about statements made by Reeder to restrict consideration of the evidence to its proper scope. Martin therefore has not established ineffective assistance by counsel's failure to object to Detective Carmona's statements. *See Thompson*, 9 S.W.3d at 812, 814 (declining to speculate on counsel's failure to object to hearsay given silent record); *Ortiz v. State*, 93 S.W.3d 79, 95 (Tex. Crim. App. 2002) (suggesting strategic reasons for failure to object).

## C. Extraneous-offense testimony

The State elicited testimony from Detective Carmona, Sergeant J. Eaton, and M. Rankin to establish Martin's identity in the robbery of Cardona-Melendez. At trial, Detective Carmona testified about his investigation of the Galleria Mall robbery and the Sharpstown Hilton Hotel robbery. Sergeant Eaton testified about the Galleria Mall robbery involving Rankin. Rankin testified about her experience being robbed. Rankin provided specific details of the event and described her

12

injuries. Martin argues that his counsel failed to object to the admission of evidence of two extraneous robberies. He contends that the extraneous-offense evidence did not establish his identity because "there were no fingerprints or DNA" that linked him to "Rankin's property found in the white Mercedes." Martin concedes that his identity was placed at issue through cross-examination.

Generally, evidence of a person's character is inadmissible to prove that on a particular occasion the person acted in conformity with the character or trait. TEX. R. EVID. 404(a)(1). Although evidence of a crime, wrong, or other act is not admissible to prove a person's character to show that on a particular occasion the person acted in accordance with the character, this evidence may be admissible for other purposes, such as proving identity of the accused. TEX. R. EVID. 404(b). "An extraneous offense may be admissible to show identity only when identity is at issue in the case." *Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006); *see Jabari v. State*, 273 S.W.3d 745, 751 (Tex. App.—Houston [1st Dist.] 2008, no pet.). A defendant may place his identity at issue by his cross-examination, affirmative evidence, or defensive theory. *See, e.g.*, *Page*, 137 S.W.3d at 78 (cross-examination); *Segundo v. State*, 270 S.W.3d 79, 86 (Tex. Crim. App. 2008) (affirmative evidence); *Wintters v. State*, 616 S.W.2d 197, 200 (Tex. Crim. App. 1981) (defensive theory).

13

The trial court ruled that the extraneous evidence of the two robberies were admissible to prove identity. *See* TEX. R. EVID. 404(b)(2) (extraneous offenses admissible if relevant to other matters, such as "proving motive . . . identity"). Martin concedes that he placed his identity at issue. But he contends that the extraneous robberies were not sufficiently similar to be probative of identity due to the lack of common characteristics.

Under Rule 404(b), we must apply a two-prong test to determine "whether the evidence is relevant to a fact of consequence in the case apart from its tendency to prove conduct in conformity with character and whether the probative value of the evidence is substantially outweighed by unfair prejudice." *Mason v. State*, 416 S.W.3d 720, 740 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (citations omitted). The purpose of this test is to ensure that the defendant is tried for the offense charged, and not for any other crimes. *Segundo*, 270 S.W.3d at 87. To establish that an extraneous offense is relevant in proving identity, the record must show common characteristics between the charged crime and the extraneous offense. *Id.* at 88. These characteristics must be so distinctively similar that they constitute a "signature" or show the accused's "distinctive and idiosyncratic manner of committing criminal acts." *Id.*; *Page*, 213 S.W.3d at 336.

Common characteristics that may make extraneous offenses much like the charged offense include, as examples, "proximity in time and place, mode of

14

commission of the crimes, the person's dress, or any other elements which mark both crimes as having been committed by the same person." *Segundo*, 270 S.W.3d at 88 (providing, as an example, "three bank robberies are committed over a four-year period in different cities in which the robber used an antique silver crossbow"). Extraneous-offense evidence need not be identical to the charged offense to be probative. *Page*, 216 S.W.3d at 338. But generic similarities will not constitute a signature. *Id*. at 336; *Segundo*, 270 S.W.3d at 88.

The characteristics of the charged crime and the extraneous robberies were similar. Detective Carmona testified about the modus operandi of the robberies as a crime spree. First, the suspects escaped in a white Mercedes in all three robberies. Second, all three robberies occurred on October 26, 2019, around the same time. Cardona-Melendez was robbed around 4:40 p.m. The Galleria Mall robbery occurred around 5:40 p.m. and the Sharpstown Hilton Hotel robbery occurred around 8:25 p.m. Third, Detective Carmona noted that the location of all three robberies were geographically close in proximity. In explaining the proximity of the locations, Detective Carmona stated, "The Galleria from the other two is probably no more than 8, 10 miles max and probably a little bit less. You could get to there fairly quick." And finally, all three robberies involved multiple assailants who were described similarly. The description of all three robberies was so similar "that it is highly likely that each robbery was committed by the same person."

15

*Segundo*, 270 S.W.3d at 88. We conclude that the trial court's decision to admit the two extraneous offenses was within the zone of reasonable disagreement because the descriptions established Martin's signature or identity. Thus, Martin has not established ineffective assistance by counsel's failure to object to the admission of extraneous-offense evidence.

## Conclusion

We affirm the judgment of the trial court.


Sarah Beth Landau
Justice

Panel consists of Chief Justice Radack and Justices Landau and Hightower.

Do not publish. TEX. R. APP. P. 47.2(b).