**Affirmed and Opinion Filed March 23, 2022**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-21-00019-CR**

**No. 05-21-00021-CR**

**ANTONIO MARKEITH JONES, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 380th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause Nos. 380-83529-2019, 380-83530-2019**

## MEMORANDUM OPINION

Before Justices Molberg, Nowell, and Goldstein
Opinion by Justice Molberg

Appellant Antonio Jones appeals his convictions for unauthorized use of a motor vehicle and aggravated robbery. In two issues, appellant argues (1) the trial court reversibly erred by admitting hearsay testimony and (2) his constitutional right to confront adverse witnesses was violated when the State's witnesses testified via Zoom. Because we find harmless the hearsay testimony in question and conclude appellant failed to preserve his second issue for our review, we affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

## I.    Background

After appellant made "open pleas" of guilty to aggravated robbery and unauthorized use of a motor vehicle, the trial court conducted a partially remote punishment hearing on December 17, 2020.  Counsel for the State appeared remotely.  The trial court asked the State whether all of its witnesses would appear remotely, and the State responded affirmatively.[1]  Appellant did not object to the remote nature of the proceeding or to the remote testimony of any of the State's witnesses.

Detective Zachary Petty testified about the charged offenses in this case.  Petty testified that he received from dispatch the description of a vehicle stolen at gunpoint.  He found the vehicle and pursued it before it stopped and the driver and passenger exited and fled.  Petty observed a gun in the passenger's hand.  Petty's recruit chased the driver on foot, while Petty pursued the passenger.  Other officers on the scene eventually caught the passenger, who was wearing gloves and was identified as appellant.  Officers discovered a loaded handgun in the bushes where appellant fled.  Despite an extensive search, the driver was never found, but a firearm with an extended magazine was found in the direction he ran.

---

[1] At the time of the hearing, the Supreme Court of Texas's Twenty-Ninth Emergency Order Regarding COVID-19 State of Disaster, 629 S.W.3d 863 (Tex. 2020), was in effect; it amended and renewed the Twenty-Sixth Emergency Order Regarding COVID-19 State of Disaster, 609 S.W.3d 135 (Tex. 2020). Under the twenty-sixth order, in view of "the imminent threat of the COVID-19 pandemic[,]" Texas courts were generally commanded "to continue to use all reasonable efforts to conduct proceedings remotely." 609 S.W.3d at 135–36.

Detective Steven Sanders testified he responded to the scene and interviewed the victim, Ajay Pokhrel, who was visibly shaken. Sanders said the offense happened at an apartment complex. Appellant and the other suspect had waited for someone to arrive, "[Pokhrel] backed into a space, suspects came out from behind a parked Suburban and robbed [Pokhrel] of his car, the belongings in it." Sanders stated that appellant, who "seemed like he knew he had been caught," said he "had robbed a person of his vehicle" but declined to provide any more details.

The victim, Pokhrel, testified he was an international student from Nepal studying computer science. He said, the night of the offense, he had picked up around $2,200 cash for tuition from his uncle in Irving, deposited half of it at an ATM, and then returned to his apartment in Plano. Pokhrel backed into a spot and as he exited his car two men pulled guns on him. Each had his gun pointed at Pokhrel's face; he "couldn't move" and he told them to "just take everything." They took his wallet, phone, passport, and money, and then took his car and left. Pokhrel found his roommate and they called 911. The experience scared Pokhrel "in every way," and afterwards he stayed at his uncles' home "pretty often" to avoid his apartment complex. It affected his studies and his sleep; Pokhrel said he was "always insecure" as a result. Losing his passport, which contained his visa, affected his ability to renew his driver's license and travel home to visit his family.

Officer Pedro Trujillano testified about an offense appellant committed in 2015 when Trujillano responded to the robbery of a Domino's delivery driver. Anita

Swanson, an elderly woman, was delivering pizza to a house, which turned out to be abandoned. She was "dragged inside" the house and "pulled in and assaulted." The State then asked Trujillano,

> Q. Based on your investigation, what do you believe occurred that night?
>
> A. So someone ordered pizza --
>
> [Defense counsel]: Your Honor, I'm going to have to object to the hearsay. I don't object to his personal observations but information he received by hearsay, I have to object to.
>
> [Trial court]: All right. Sustained.
>
> Q. Did you end up talking with the victim?
>
> A. I did.
>
> Q. Based on your conversations with her, did you develop a theory of what you believed happened?
>
> A. Yes, I did.
>
> Q. What was that theory?
>
> A. That she was delivering pizza to a house --
>
> [Defense counsel]: Objection, hearsay, Your Honor.
>
> [Trial court]: Overruled.
>
> Q. You can answer.
>
> A. So the victim explained to me she was delivering a pizza to a house and she did not know it was abandoned, and when she got there, two individuals pulled or pushed her in the house and assaulted her and took her money, cell phone, and left her there, and took her car that was parked outside.

Trujillano then stated Swanson received "physical injuries to her face" because "she was stomped in the face by someone wearing boots." He said that, when he spoke

with Swanson, she was "still pretty scared," "upset, crying a little bit," and her hands were shaking. The next day, Swanson's stolen vehicle was spotted, and an investigation ensued. Police identified appellant and another minor as suspects. Trujillano said that a warrant eventually issued for appellant for aggravated robbery.

The State called no other witnesses but admitted several exhibits, including a letter appellant wrote that, among other things, chronicled his criminal history. He wrote that his first arrest was for aggravated robbery, but it was dropped to simple robbery and he did two months, got probation, violated a condition, and served three weeks' confinement. He stated he "[caught] another agg robbery," and got six to nine months at a placement center in Dallas. He "ended up catching a [theft] of person" for which he did six to nine months. He started "selling weed" and then "got locked up for family violence" and did two months for that. He "got locked up again for [four] [burglaries] and a burglary of a habitation" and did six to nine months. Then, he wrote, "I'm back locked up here" on his "first adult charge" where he said he had "been thugging" until he gets out.

Appellant called two witnesses during the punishment hearing. His mother testified. She acknowledged appellant's prior record and his criminal history as a juvenile and confirmed that he lived with her "part of the time that those incidents were occurring[.]" She said appellant's problems began when he was eleven or twelve due to peer pressure from older kids. Christopher Holub, the father of appellant's friend Corbin, also testified. He said appellant came to live with them

around 2016 for at least six months to give him a positive male role model. Holub described appellant as smart, empathetic, and capable. He acknowledged appellant's criminal history but said that appellant was "extremely helpful and respectful" when appellant lived with him. Holub said appellant deserved a second chance.

After hearing arguments from each side and taking a break to review the exhibits, the trial court sentenced appellant to two years' confinement for unauthorized use of a motor vehicle and twenty-two years' confinement for aggravated robbery. The court ordered the sentences to run concurrently.

## II. Discussion

In his first issue, appellant argues the trial court abused its discretion by admitting hearsay testimony. As described above, after the trial court overruled appellant's hearsay objection, Officer Trujillano testified,

> So the victim explained to me she was delivering a pizza to a house and she did not know it was abandoned, and when she got there, two individuals pulled or pushed her in the house and assaulted her and took her money, cell phone, and left her there, and took her car that was parked outside.

Hearsay means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement. TEX. R. EVID. 801(d). It is inadmissible unless a statute, the rules of evidence, or other applicable rules provide otherwise. TEX. R. EVID. 802. It is true that "[p]olice officers may testify to explain how the investigation began and how the defendant became a suspect." *Lee v. State*,

29 S.W.3d 570, 577 (Tex. App.—Dallas 2000, no pet.). And "testimony by an officer that he went to a certain place or performed a certain act in response to generalized 'information received' is normally not considered hearsay because the witness should be allowed to give some explanation of his behavior." *Poindexter v. State*, 153 S.W.3d 402, 408 n.21 (Tex. Crim. App. 2005), *abrogated on other grounds by Robinson v. State*, 466 S.W.3d 166 (Tex. Crim. App. 2015). But "details of the information received" are inadmissible hearsay. *Id.*

The State does not argue that the testimony at issue here was not hearsay; instead, it argues, appellant was not harmed by its admission. We agree. Assuming the officer's testimony was hearsay, we must disregard any error in its admission because, we conclude, it did not affect appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b); *Potier v. State*, 68 S.W.3d 657, 663 (Tex. Crim. App. 2002). Under this standard, we may not reverse if, "after examining the record as a whole," we have "fair assurance that the error did not have a substantial and injurious effect or influence in determining" the verdict. *See Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007). In making that determination, "we consider: (1) the character of the alleged error and how it might be considered in connection with other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence supporting the verdict; and (4) whether the State emphasized the error." *Macedo v. State*, 629 S.W.3d 237, 240 (Tex. Crim. App. 2021).

We conclude any error did not have a substantial and injurious effect or influence in determining appellant's sentence. Trujillano testified to the substance of the statements at issue here elsewhere without objection. He stated that, on March 7, 2015, a "pizza delivery person, an elderly lady was delivering pizza to a house, which turned out to be abandoned, and that's where she was dragged inside and pulled in and assaulted." He specified the victim "was stomped in the face by someone wearing boots" and was injured as a result; a photograph depicting her injuries was admitted as an exhibit. Trujillano stated that the victim's car was taken and later recovered. And he testified that a warrant issued for appellant for this offense. Furthermore, an Order of Adjudication and Judgment of Disposition with Placement for the offense of aggravated robbery, committed on March 7, 2015, by appellant, was admitted as an exhibit.

Thus, as the State points out, only two facts were added by the testimony at issue here: there were two perpetrators, and they took the victim's phone and money in addition to her car. Therefore, the "erroneously admitted evidence established little, if anything, negative about appellant that was not" established by unobjected-to evidence. *Clay v. State*, 240 S.W.3d 895, 905–06 (Tex. Crim. App. 2007). Accordingly, we conclude the testimony did not have a substantial and injurious effect or influence in determining the verdict. *See Casey*, 215 S.W.3d at 885. We disregard any error and overrule appellant's first issue. *See* TEX. R. APP. P. 44.2(b).

In his second issue, appellant argues he was denied his Sixth Amendment right to confront adverse witnesses when the State's witnesses testified via Zoom. He relies on *Haggard v. State*, 612 S.W.3d 318 (Tex. Crim. App. 2020). In that case, a sexual assault nurse examiner testified via FaceTime—over defense objections—because traveling to Texas was inconvenient. *Id.* at 323–24. The court observed that, since *Maryland v. Craig*, 497 U.S. 836 (1990), was decided, the court "has required a necessity finding in every case in which [it has] considered a Confrontation Clause challenge to the cross-examination of a witness via two-way video system." *Haggard*, 612 S.W.3d at 325. Applying *Craig*, the court noted that "the judge heard no evidence and made no case-specific finding." *Id.* at 327. The court concluded it did "not think it is an important public policy to allow the State to procure a witness's testimony remotely when the State had sufficient time and ability to subpoena the witness, and the witness was available to appear and testify, but the State chose not to." *Id.* Moreover, the "right to physical, face-to-face confrontation" protected by the Confrontation Clause "cannot be so readily dispensed with based on the mere inconvenience to a witness." *Id.* at 328.

Here, unlike in *Haggard*, appellant did not object to the State's witnesses' remote testimonies. Nothing in the record speaks to any complaint about the remote nature of the punishment hearing.[2] Generally, to preserve error for appellate review,

---

[2] We note that, under the supreme court's twenty-sixth COVID-19 order, only remote "jury proceedings" in criminal cases required "appropriate waivers and consent obtained on the record from the defendant and prosecutor." 609 S.W.3d at 137.

a party must make a timely request, objection, or motion stating the grounds for the ruling sought from the trial court. *See* TEX. R. APP. P. 33.1(a)(1)(A). "Confrontation Clause claims are subject to this preservation requirement." *Davis v. State*, 313 S.W.3d 317, 347 (Tex. Crim. App. 2010); *see also Deener v. State*, 214 S.W.3d 522, 527 (Tex. App.—Dallas 2006, pet. ref'd) ("[T]he right of confrontation is a forfeitable right—not a waivable-only right—and must be preserved by a timely and specific objection at trial.").

We do not read *Haggard* to abrogate this preservation requirement. As noted above, the defendant in *Haggard* objected to the witness's FaceTime testimony and the court did not address preservation or waiver. 612 S.W.3d at 323–28. Moreover, the cases on which *Haggard* relied reviewed trial court rulings over defense objections. *See Coy v. Iowa*, 487 U.S. 1012, 1015 (1988) ("Appellant objected strenuously to use of the screen, based first of all on his Sixth Amendment confrontation right."); *Maryland v. Craig*, 497 U.S. 836 (1990) ("The court rejected Craig's objection that the procedure's use violates the Confrontation Clause of the Sixth Amendment, ruling that Craig retained the essence of the right to confrontation."); *Marx v. State*, 987 S.W.2d 577, 579 (Tex. Crim. App. 1999) ("Appellant objected to the use of closed circuit television testimony on both constitutional and statutory grounds. He argued first that use of such testimony would deny him his Sixth Amendment right to confront the witnesses against him."); *Gonzales v. State*, 818 S.W.2d 756, 759 (Tex. Crim. App. 1991) ("[T]he trial court,

over appellant's objections, once again granted the State's motion and allowed Yolanda to testify via the closed-circuit television system.").

Because appellant did not object to the remote testimony of any of the State's witnesses, this issue is not preserved for our review. *See also Oliver v. State*, No. 03-19-00725-CR, 2020 WL 5105209, at *1–2 (Tex. App.—Austin Aug. 27, 2020, pet. ref'd) (mem. op., not designated for publication) (concluding appellant's confrontation complaint about witnesses testifying via videoconference was not preserved for appellate review when appellant did not raise complaint in trial court). Appellant's second issue is overruled.

## III. Conclusion

Having overruled appellant's two appellate issues, we affirm the trial court's judgment.

/Ken Molberg/
210019f.u05                                 KEN MOLBERG
210021f.u05                                 JUSTICE
DO NOT PUBLISH
Tex. R. App. P. 47



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ANTONIO MARKEITH JONES, Appellant

No. 05-21-00019-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 380th Judicial District Court, Collin County, Texas Trial Court Cause No. 380-83529-2019.
Opinion delivered by Justice Molberg. Justices Nowell and Goldstein participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 23rd day of March, 2022.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ANTONIO MARKEITH JONES,
Appellant

No. 05-21-00021-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 380th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 380-83530-
2019.
Opinion delivered by Justice
Molberg. Justices Nowell and
Goldstein participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.


Judgment entered this 23rd day of March, 2022.